IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

ELIJAH DOLAN,

       Plaintiff,

v.                              Civil Action No. 2:03-cv-00208

JO ANNE B. BARNHART,
Commissioner of Social
Security,

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are the parties' cross-motions for judgment on the pleadings.

Plaintiff, Elijah Dolan (hereinafter referred to as "Claimant"), first filed an application for DIB on July 6, 2001, alleging disability as of June 30, 1998, due to colon conditions, "nerves", and hearing impairments.  (Tr. at 128, 211.)  Claimant

was eligible for DIB through September 30, 2001. (Tr. at 25.) However, this claim was denied initially and upon reconsideration. (Tr. at 93.) Claimant requested a hearing by an ALJ, and an initial hearing took place before the Honorable John Melanson on September 9, 2002. (Tr. at 412-42.) By Order dated November 26, 2002, the ALJ found that Claimant was not entitled to benefits. (Tr. at 63-8.) Claimant then requested review by the Appeals Council. The Council initially denied further review of the hearing order on February 27, 2003, and Claimant filed a Complaint in this court on March 6, 2003. (Tr. at 72-4.)

Thereafter, however, the folder in Claimant's previous claim was misplaced, which prompted this court to issue a sixth sentence remand. (Tr. at 76, 85.) The Appeals Council then vacated the November 26, 2002 hearing order, and remanded to the Office of Hearings and Appeals for a *de novo* hearing. (Tr. at 85.)

Meanwhile, Claimant submitted initial claims seeking SSI and DIB on March 6, 2003. (Tr. at 150.) The DIB application was denied based upon a finding that administrative res judicata applied. (Tr. at 24.) The DDS denied the SSI application on May 30, 2003 and affirmed this upon reconsideration on August 29, 2003. (Tr. at 24-5.) Both portions of the March 2003 application were escalated to the hearing level and are combined with the September 22, 2003 remand order. (Tr. at 25.)

A supplemental hearing was held on December 10, 2003 before

2

the Honorable Theodore Burock (hereafter, "the ALJ").[1] (Tr. at 443-83.)  By decision dated May 28, 2004, the ALJ determined that Claimant was entitled to SSI benefits as of April 15, 2004 (his 55th birthday), but was not entitled to DIB benefits.  (Tr. at 24-45.) The ALJ's decision became the final decision of the Commissioner on February 3, 2005, when the Appeals Council denied Claimant's request for review.   (Tr. at 9.)   On April 4, 2005, the Commissioner moved to vacate the prior remand Order, reinstate the case, and file an Answer.  By Order dated April 7, 2005, the undersigned granted such request.  Claimant's Motion for Judgment on the Pleadings and Defendant's Motion for Summary Judgment on the Pleadings were filed and are now ripe for consideration.

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R.

---

[1] The Decision indicates that Judge Melanson had since transferred from local office.  (Tr. at 25.)

§§ 404.1520, 416.920 (2002).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2002).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work

4

experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 28; Finding No. 2, tr. at 44.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairment of obesity. (Tr. at 37; Finding No. 3, tr. at 44.)  At the third inquiry, the ALJ concluded that Claimant's impairment does not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 38; Finding No. 4, tr. at 44.)  The ALJ then found that Claimant has a residual functional capacity for a full range of light work.  (Tr. at 40, 42; Finding No. 6, tr. at 44.)  As a result, Claimant cannot return to his past relevant work.  (Tr. at 42; Finding No. 7, tr. at 44.) Nevertheless, the ALJ concluded based upon Claimant's profile that a finding of "not disabled" was supported by application of Medical-Vocational Rule 202.18 prior to Claimant's attainment of age 50, and by application of Rule 292.11 prior to his attainment of age 55.

The ALJ then found that Medical-Vocational Rule 202.02, applied as of April 14, 2004 (Claimant's 55th birthday), directed a finding of disabled.  (Tr. at 45.)  Accordingly, the ALJ found

that the Claimant was not disabled prior to April 15, 2004, but was eligible for Supplemental Security Income payments under sections 1602 and 1614(a)(3)(A) of the Social Security Act based upon this adverse onset date.  (Tr. at 45.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In Blalock v. Richardson, substantial evidence was defined as

> evidence which a reasoning mind would accept
> as sufficient to support a particular
> conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less
> than a preponderance. If there is evidence to
> justify a refusal to direct a verdict were the
> case before a jury, then there is 'substantial
> evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

6

Claimant's Background

Claimant was 53 years old at the time of the administrative hearing. (Tr. at 443, 452.) He has a ninth grade education. (Tr. at 454.) In the past, he owned and managed a timber business. (Tr. at 166.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence, and will discuss it further below as necessary.

1.  *Mental Impairments*

Claimant did not seek mental health treatment or take any medications for mental health problems prior to expiration of his eligibility for DIB benefits on September 30, 2001. (Tr. at 213-6, 251, 25.) Rather, upon Claimant's allegations, the state arranged several psychological evaluations. The first of these took place in August, 2001 with licensed psychologist Lisa Tate, M.A. (Tr. at 249-55.) Ms. Tate found that Claimant had logical and coherent thought processes, fair insight and average judgment, and that his immediate and remote memories were intact. (Tr. at 251-2.) Claimant's recent memory was markedly deficient. His concentration was adequate. (Tr. at 252.)

Ms. Tate's office administered the WAIS-III which yielded a full scale IQ of 65; however, results were deemed invalid due to Claimant's inadequate motivation and lack of interest in testing. The report notes that Claimant gave up on items despite repeated

encouragement, and quit easily throughout the exam. Claimant's results were also inconsistent with the fact that he had a driver's license and drove, and had been a self-employed timber worker for 12 years. (Tr. at 252-3.)

Ms. Tate noted that Claimant's daily activities included showering, going to his mother's home to eat, going to the post office, keeping his house clean, and visiting with friends at a local restaurant. Weekly activities included cutting the grass twice a week, washing his car, taking his mother to the grocery store, picking up in the yard and going to a club with a friend. Ms. Tate found that Claimant's social functioning was fair, and diagnosed a depressive disorder, NOS, with anxious features. (Tr. at 254.)

State agency medical source Mary H. Hoback Clark, M.D. completed a Psychiatric Review Technique form in September, 2001. (Tr. at 273-86.) Dr. Clark concluded that Claimant had a depressive disorder, NOS which produced mild restrictions in his activities of daily living, social functioning, and maintenance of concentration, persistence, and pace; but that Claimant had no repeated episodes of decompensation. (Tr. at 276, 283.) Dr. Clark found that Claimant did not meet the requirements of the "C" criteria of any Listing. (Tr. at 284.) Debra L. Lilly, Ph.D. affirmed these findings in November 2001. (Tr. at 273.)

Claimant was evaluated by licensed psychologist William R.

8

Hall, M.A. at his counsel's request in June, 2002. (Tr. at 323-7.) Mr. Hall found that Claimant was pleasant and cooperative and exhibited normal speech and stream of thought. His judgment was mildly deficient as evidenced by his Comprehension subtest score. His immediate and remote memory were normal, but recent memory was mildly deficient, as was his concentration. (Tr. at 325-6.)

Mr. Hall's office administered the WAIS-III which yielded a full scale IQ score of 67. Mr. Hall noted that Claimant tended to be easily frustrated and seemed to be humiliated by his low performance; however, he responded to encouragement and reassurance with consistent effort and self application. Results were consistent with his previous testing of August 2001, and were considered valid. (Tr. at 326.) Mr. Hall noted that Claimant's scores correlated with his educational and work histories; Claimant indicated that his girlfriend had managed the financial and bookkeeping affairs during operation of his timber business. (Tr. at 326.)

On the WRAT, Claimant's scores indicated a grade 2 reading level, a grade 1 spelling level, and a grade 4 arithmetic level. (Tr. at 327.) These were noted to be consistent with the assessment of August 2001 and were also considered valid. (Tr. at 327.) Mr. Hall diagnosed dysthemic disorder 300.4; and mental retardation, mild. He determined that Claimant's overall clinical picture was consistent with these. He stated that Claimant may benefit from

treatment including counseling and/or medication for his mood
disorder. He was not competent to manage his own finances. (Tr. at
327.)

Mr. Hall also completed a Psychiatric Review Technique form on
June 30, 2002. (Tr. at 328-34.) He determined that Claimant was
mentally retarded based upon his IQ score and a physical or other
mental impairment imposing an additional and significant work-
related limitation or function. (Tr. at 330.) He indicated that
Claimant had moderate restrictions in his activities of daily
living; marked difficulties in maintaining social functioning; and
mild difficulties in maintaining concentration, persistence, or
pace. (Tr. at 333.) On a Mental Impairment Questionnaire of the
same date, Mr. Hall opined that Claimant's ability to remember
work-like procedures was moderately limited; his ability to
remember and understand very short and simple instructions was
slightly limited; and his ability to understand and remember
detailed instructions was extremely limited. (Tr. at 335-6.)
Claimant's ability to carry out very simple instructions was
slightly limited; his ability to carry out detailed instructions
was markedly limited; his ability to maintain attention for
extended periods was markedly limited; his ability to maintain
regular attendance and be punctual within customary tolerances was
slightly limited; his ability to work in coordination with or
proximity to others without being unduly distracted by them was

markedly limited; his ability to make simple work-related decisions was slightly limited; and his ability to complete a normal work day and work week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods was markedly limited. (Tr. at 336.)

Within the realm of social interaction, Mr. Hall opined that Claimant's ability to interact appropriately with the general public was markedly limited; his ability to ask simple questions or request assistance was slightly limited; his ability to accept instructions and respond appropriately to criticism from supervisors was markedly limited; his ability to get along with coworkers or peers with out unduly distracting them or displaying behavioral extremes was moderately limited; and his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness was moderately limited. (Tr. at 336.)

Within the realm of adaptation, Mr. Hall indicated that Claimant was markedly limited in the ability to respond appropriately to changes in a routine work setting; slightly limited in his ability to be aware of normal hazards and take appropriate precautions, and markedly limited in his ability to travel in unfamiliar places or use public transportation. He was also markedly limited in his ability to set realistic goals or make

11

plans independently of others.  (Tr. at 337.)

Mr. Hall indicated that Claimant's depression may be exacerbating his somatic preoccupation.  (Tr. at 337.)

On April 15, 2003, following the initial hearing herein, Claimant was evaluated by Scott Spaulding, M.A., supervised by Kay Collins-Ballina, M.A., at the request of the state.  (Tr. at 341-5.) Claimant reported a history of colon problems and problems with his nerves.  He claimed he was unable to finish any activities and did not know why.  He worried a lot, was irritable and sad, and had memory problems.  He also complained of sleeping problems.  (Tr. at 341-2.)

Mr. Spaulding observed a solemn mood; constricted affect; normal thought patterns, judgment and insight; normal immediate and remote memory; and moderately deficient delayed memory.  (Tr. at 344.)  He opined that Claimant's attention and concentration were within normal limits, and his social functioning was moderately deficient.  He noted that Claimant was cooperative but appeared to be frustrated at times.  (Tr. at 344.)

Mr. Spaulding diagnosed anxiety disorder NOS and major depressive disorder, recurrent, moderate (296.32).  He indicated that Claimant's prognosis was fair, with treatment.  Claimant's persistence and pace were within normal limits.  He would be capable of handling any benefits awarded.  (Tr. at 344-5.)

Following the initial hearing, on May 28, 2003, state agency

12

medical source Robert Solomon, Ed.D completed a Psychiatric Review Technique form.  (Tr. at 361-74.) Dr. Solomon opined that Claimant suffered from an affective disorder and an anxiety disorder but that these impairments were not severe and did not meet the requirements of any "C" criteria.  (Tr. at 364, 366, 361, 372.) Dr. Solomon further opined that Claimant had no restrictions in his activities of daily living, mild difficulties in social functioning and maintaining concentration, persistence and pace, and no episodes of decompensation.  (Tr. at 371.)

State agency medical source Rosemary L. Smith, Psy.D. completed a Psychiatric Review Technique form on August 27, 2003. (Tr. at 392-405.)  She opined that Claimant suffered from major depressive disorder and anxiety, but that these impairments were not severe.  (Tr. at 392, 395, 397.)  Claimant had mild restrictions in activities of daily living, mild difficulties maintaining social functioning, and mild difficulties in maintaining concentration, attention and pace.  He had no significant episodes of decompensation.  (Tr. at 402.) These impairments did not establish the presence of "C" criteria. (Tr. at 403.)

2.  *Physical Impairments*

State agency medical source Nilima Bhirud, M.D. performed a disability determination evaluation on August 29, 2001. (Tr. at 256-60.) Claimant reported decreased hearing, colon problems, and

pain in his left knee. He stated that he had difficulty sleeping at night but gave no history of feeling depressed. (Tr. at 256-7.) Claimant further described aching back pain, worsened by prolonged sitting or walking. He reported that he was able to stand 45 minutes at a time, sit 1 ½ hours at a time, and walk one half of a mile at a time. (Tr. at 257.) Claimant was 67 inches tall and weighed 256 pounds. (Tr. at 258.)

Dr. Bhirud observed that Claimant was able to hear her conversation during the examination. Despite his back complaints, knee complaints, and obesity, he was able to heel-walk, toe-walk and squat. His left knee was swollen and tender, but range of motion was normal. (Tr. at 259.) He had no neurological deficits in his lower extremities. (Tr. at 260.)

A state agency medical source completed a Physical Residual Functional Capacity Assessment form on September 20, 2001. (Tr. at 264-71.) The source indicated that Claimant could occasionally lift 50 pounds, could frequently lift 25 pounds, could stand and/or walk about 6 hours in a normal eight hour workday; could sit for a total of about 6 hours in a normal workday; and could engage in unlimited pushing or pulling. (Tr. at 265.) Claimant had no postural, manipulative, visual, communicative, or environmental limitations. Instead, his RFC was reduced due to obesity. (Tr. at 265-9.) The source found that Claimant's subjective complaints were not fully supported by medical evidence. (Tr. at 269.) These

14

findings were affirmed by Marcel Lambrechts, M.D. on October 31, 2001. Dr. Lambrechts wrote that Claimant did not have a severe physical impairment. (Tr. at 271.)

On April 11, 2003, Dr. Bhirud completed a second DDS evaluation. (Tr. at 346-50.) At that time, Claimant denied any history of pain in his knees, had no swelling or tenderness, and had normal range of motion. (Tr. at 346, 348.) Based upon Claimant's complaints of gastrointestinal bleeding, Dr. Bhirud recommended he go forward with the colonoscopy he had scheduled for June. She also recommended a sleep study due to Claimant's complaints of fatigue and a psychiatrist consultation due to his depressive symptoms. She noted that Claimant denied any back problems when asked about them. (Tr. at 348.)

State agency medical source Rosalind Go, M.D. completed a Physical Residual Functional Capacity Assessment on May 28, 2003. (Tr. at 352-59.) She opined that despite Claimant's colon problems, depression, hearing problems, rectal bleeding, gout of left foot and shortness of breath, he was able to engage in a wide variety of work-related activities. She noted that Claimant's activities of daily living were broad, including self-care, some cooking, vacuuming, shopping, driving, and visiting. (Tr. at 357.)

Claimant's colonoscopy, completed in June, 2003, indicated diverticulitis and hemorrhoids. (Tr. at 382.)

A state agency medical source completed another Physical

Functional Capacity Assessment in August, 2003. (Tr. at 383-90.) This form does not indicate any limitations in any category.

The record also contains medical records from Cabin Creek Health Center dated from 1979 through 2001 and June 10, 2003 through December 15, 2003. (Tr. at 288-322, 406-10.) These document Claimant's leg complaints, chest pain, and shortness of breath during the relevant time period. (Tr. at 288-94.) These also reflect that as of May 24, 1999, Claimant was seeking a physical for the Department of Transportation. (Tr. at 293.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in his credibility assessment; (2) the ALJ erred in failing to find Claimant disabled under Listing 12.05(c); and (3) the ALJ erred in finding that Claimant could perform light exertional work. (Pl.'s Br. at 3-10.) The Commissioner responds that the ALJ's decision was correct and was supported by substantial evidence in all respects. (Def.'s Br. at 5-14.)

*1.  Pain and Credibility*

A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. § 404.1529(b)(2004); SSR 96-7p, 1996 WL 374186 (July 2, 1996); <u>see also</u>, <u>Craig v. Chater</u>, 76

16

F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. Craig, 76 F.3d at 595. When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 404.1529(c)(4)(2004). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;

17

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(2004).

SSR 96-7p repeats the two-step regulatory provisions, and articulates the second step as follows:

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186, at *2.

Notably, Craig, supra, does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects

18

allegations of pain <u>solely</u> because the pain itself is not supported by objective medical evidence.

Claimant herein argues that the record supports his assertions of disabling pain, but that the ALJ ignored the degree and severity of his pain, as well as his non-exertional limitations and illiteracy. (Pl.'s Br. at 5-6.)

Claimant makes only this general argument. He does not point to any factors above which the ALJ failed to consider. He argues only that the ALJ failed to ascribe proper weight to his subjective complaints of pain. The court's review of the decision reveals that the ALJ properly considered the factors above, and substantial evidence supported his conclusion that Claimant's pain was not disabling as he alleged.

First, the ALJ noted that there was no medically determinable evidence supporting Claimant's alleged shortness of breath, knee or back impairments, colon dysfunction, hearing problems or visual problems. Instead, Claimant's chronic muscular pain appeared to be related to strains and his overall lack of conditioning. (Tr. at 35.) The ALJ relied upon the findings of state agency source Nilima Bhirud, M.D. on September 5, 2001, which were consistent with the findings of her later review of April 20, 2003. (Tr. at 35, <u>citing</u> tr. at 256-60, 346-50.) The ALJ reviewed Claimant's records from his treating physicians at Cabin Creek Health Center and likewise found no medically determinable impairment. Instead,

19

a note of May 24, 1999 showed that Claimant presented to the office seeking a physical examination required by the Department of Transportation (DOT). (Tr. at 293.)  As the ALJ observed, this suggests that Claimant was pursuing work at that time.  (Tr. at 36.)

Claimant supplied only scant treatment records pertaining to his alleged physical ailments; the majority of the record consisted of consultative examinations obtained by the state.  (Tr. at 39-40.)  As the ALJ stated, these examinations reflected that Claimant's weight increase was due to inactivity.  His obesity itself did not establish a basis for his complaints of severe pain and limitation.  Thus, there was no medical basis for Claimant's severely limited activities.  (Tr. at 40.)  Instead, Dr. Bhirud's testing showed normal spinal flexion, extension and sensory signs, as well as normal motor strength and sensory functioning in his lower extremities.  Claimant's records from his treating physicians at Cabin Creek Health Center likewise reflected that he was able to engage in a complete range of light work.  (Tr. at 40.)

The ALJ then considered Claimant's daily activities, and observed that Claimant was able to perform household chores without assistance, was able to shop, and had not used any prescription medication. (Tr. at 39-40.) The ALJ also noted Claimant's daily activities included preparing simple dishes for himself, driving his car, eating at McDonald's and socializing with friends there,

and cutting grass in his yard as needed. (Tr. at 38.) The ALJ
considered the exacerbating factors to Claimant's colon bleeding,
his description of his back pain and problems and problems with
"knots" or "tumors" in his legs, arms and shoulders, and his
treatment of these conditions with aspirin and rest. (Tr. at 38.)

Based on the above, the ALJ determined that there was
insufficient evidence to support the degree of pain and limitation
that Claimant alleged. In particular, the objective medical
evidence did not correlate with Claimant's assertions of severe
pain. Claimant would not be disabled by the pain alone, and would
not experience the degree of pain he alleged. (Tr. at 40.)

As the ALJ noted, he was unable to substantiate Claimant's
allegations because he had no significant neurological,
gastrointestinal, musculoskeletal, or communicative disorders, or
any mental health impairments. These findings were explained in
multiple DDS evaluations. (Tr. at 41-2.) The ALJ also took note
of the unexplained discrepancy between the Claimant's allegations
of severe pain and the minimal level of treatment he sought to
alleviate that pain. (Tr. at 37.)

The ALJ then examined the record as a whole, and noted
numerous other inconsistencies. He noted that on Claimant's July
2001 disability report, Claimant alleged disability due to colon
problems, eyesight, and possible diabetes. (Tr. at 39, <u>citing</u> tr.
at 165.) However, the report indicated that the reason Claimant

21

stopped working was not any disability, but was due to the fatality of one of his employees, for which OSHA shut down his business. (Tr. at 39, <u>citing</u> tr. at 165.)

The ALJ then noted that while Claimant alleged he became disabled in 1999, he sought a DOT physical in May of that year, and earned $990 that year.  (Tr. at 39.)  This further indicated that Claimant was not forthcoming in his testimony regarding work, and that his functional capacity was much higher than he was willing to admit during this period.  (Tr. at 39.)

A second undated disability report also contained vastly contradictory statements by Claimant as to his alleged onset date and date last worked.  On the form, Claimant states that he last worked on November 27, 2002; however, he simultaneously alleged a disability onset date of June 31, 1999 due to "nerves, hearing [problems], back, shortness of breath, and weakness."  (Tr. at 211.)  Both of these cannot be true; if Claimant was disabled in June 1999, he would not have been able to continue working until November 27, 2002.  This is also inconsistent with the date Claimant alleges disability in his other report, which indicates he stopped working on June 30, 1998 and became disabled on that date. (Tr. at 165.) Next, on the undated form, Claimant stated in section 3, page 3 that he did logging for the period of 1989 through 2000. (Tr. at 212.) As the ALJ found, these serious inconsistencies show that Claimant's assertions as to material information such as onset

22

date, ability to work, and the history of his impairments cannot be accepted as true.  (Tr. at 39.)

The ALJ properly applied the factors set forth in 20 C.F.R. § 404.1529 and 416.929, as well as SSR 96-7p, and properly considered the entire record in rendering an opinion as to Claimant's pain and credibility.  Substantial evidence supports his conclusions that Claimant was not disabled by pain and was not fully credible in his allegations thereof.

Claimant's argument that the ALJ failed to consider his illiteracy is unavailing.  The ALJ considered this allegation, but detected that Claimant had made inconsistent statements as to his ability to read and understand writing.  In his disability report completed in July 2001, Claimant stated that he could read English and write more than his name in English.  (Tr. at 164.) On another document, he indicated that he was able to complete forms by himself.  (Tr. at 195.)  Still later, on an undated disability report, Claimant reported that he was unable to read or write more than his name in English. (Tr. at 210.)

Given these responses, Claimant is not illiterate according to 20 C.F.R. § 404.1564(b)(1), 416.964(b)(1)(2004).  The regulations consider an individual illiterate if he/she cannot read or write simple messages such as instructions or inventory lists, even though the person can sign his/her name.  Generally, an illiterate person has little or no formal schooling.  Id. Claimant completed

23

the ninth grade. (Tr. at 217.)

This authority, together with the inconsistencies in Claimant's filings and Claimant's overall lack of credibility, supported the ALJ's finding that Claimant was not illiterate.

Claimant contends that the ALJ failed to consider his non-exertional limitations. (Pl.'s Br. at 6-7.) Claimant has failed to specify which non-exertional impairments the ALJ failed to consider, and has failed to present any facts suggesting that he was indeed limited by these.  The ALJ's analysis of Claimant's mental impairments is discussed in section (2).  However, given the vagueness of this argument, the court is unable to address this concern any further.

The court proposes that the presiding District Judge find that the ALJ's decisions as to Claimant's pain and credibility and his claim of illiteracy were supported by substantial evidence.

*2.    Listing 12.05*

Claimant argues that the ALJ failed to properly consider his non-exertional limitations and that he met the requirements of Listing 12.05.  (Pl.'s Br. at 6-7.) He claims that the IQ scores measured by Mr. Hall satisfy the analysis, and that the ALJ erred in rejecting Mr. Hall's reports. (Pl.'s Br. at 6.)

Claimant overlooks the language in the Listing requiring that the proffered IQ scores be <u>valid</u>.  20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05 (C) (Listing can be met with "a *valid* verbal,

24

performance, or full scale IQ score of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function", emphasis added.) The ALJ rejected the IQ scores herein because many factors in the record suggested that they were invalid. (Tr. at 31.) First, Claimant's work history revealed that he had been self-employed for many years, supervising employees (tr. at 166, 175, 224), maintaining his own equipment, purchasing supplies (tr. at 166), and attending training sessions with his workers. (Tr. at 477.) Even if Claimant had to delegate paperwork as he alleged, these other abilities indicate that he functioned at a higher level than his scores reflect. (Tr. at 31.) The ALJ noted in addition to this that Claimant lived independently his entire adult life, and that nothing in the record suggested that his adaptive functioning was impaired or that he had any severe deficits in this realm. (Tr. at 31.)

The ALJ correctly noted that the regulations and case law do not require an ALJ to make a finding of mental retardation solely based upon questionable standardized intelligence test scores. (Tr. at 31, citing 20 C.F.R. Part 404, Subpart P, App. 1 § 12.00 (D)). Instead, the regulations state that in addition to medical evidence the Administration will consider all relevant information in the case record including information from the individual and information concerning Claimant's functioning during any work

attempts.  20 C.F.R. Part 404, Subpart P, App. 1 § 12.00(D)(1)(a), (b), and 12.00(D)(3)(2004).  According to §(D)(6), results of standardized tests are only part of the overall assessment.  Other factors include the validity and reliability of the raw test scores and their consistency with the claimant's developmental history and degree of functional limitation.  Id.

    In this case, the ALJ noted that Claimant functioned independently his entire adult life, ran a business as a logger, had control over employees and solicited business from others. (Tr. at 32.) A review of Claimant's school records likewise do not support his allegations of mental retardation; by seventh grade he scored more average and above average grades than below average, and did not fail any grades.  (Tr. at 203.) The ALJ observed that Claimant's vocational history, educational status, ability to live independently, and his level of articulation and understanding are more consistent with a person of higher intellect than the test results alone suggest.  (Tr. at 32.)  The court agrees.

    As Claimant states, the ALJ did note that Mr. Hall was hired by Claimant's counsel for the express purpose of furthering the social security claim.  (Tr. at 33.)  However, contrary to Claimant's argument, this was not the only reason the ALJ found Mr. Hall's report invalid.  In addition to the reasons above, the ALJ discounted Mr. Hall's report because it was based almost exclusively on Claimant's subjective complaints, and Claimant was

not credible.  (Tr. at 33.) The report indicated that Claimant gave good effort in order to attain an accurate testing of his functioning and intellect; however, Claimant failed to demonstrate such effort on testing by the DDS.  (Tr. at 33.)  Mr. Hall's report also did not correctly account for the skills Claimant used in his prior work experience: the report suggests that Claimant's mild mental retardation is compatible with his work history, "including apprentice training as a carpet layer and truck driver/logger." (Tr. at 326.) However, Claimant admits that his job functions included far more than this, including hiring employees, seeking new business, purchasing equipment, and handling money as a small business owner.  (Tr. at 34, 166, 175, 212.) So too, the ALJ noted that Claimant's jobs fall within the semiskilled or skilled description; and the fact that he was able to work as such further undermines his position that his test scores accurately portray his functional capacity.  (Tr. at 34.)  Contrary to Mr. Hall's conclusion, Claimant has not been functioning at the mildly mentally retarded level throughout his life.  (Tr. at 35.)

The ALJ further found that Ms. Tate's findings were entitled to greater weight than Mr. Hall's.  Ms. Tate's findings were well-documented and were consistent with the findings of the numerous DDS sources.  (Tr. at 31-3.) These sources contradicted Mr. Hall's findings; hence, as the ALJ noted, it would be entirely against the weight of the remaining evidence to accept Mr. Hall's conclusions.

27

(Tr. at 33.)

As the ALJ noted, DDS sources Dr. Clark and Dr. Lilly found that Claimant's allegations of depression and borderline intellectual functioning were unfounded. Instead, they found Claimant's impairments were not severe. (Tr. at 41, <u>citing</u> tr. at 273-7.) Dr. Solomon likewise found no severe mental impairments in May 2003. (Tr. at 41, <u>citing</u> tr. at 361.) Dr. Rosemary Smith found Claimant's anxiety and depression were not severe as of August 27, 2003. (Tr. at 41, <u>citing</u> tr. at 392.)

Claimant nonetheless argues that his intelligence level should have been included in the question to the vocational expert. (Pl.'s Br. at 7.) He argues that even borderline intellectual functioning is a severe impairment per se. (Pl.'s Br. at 7.)

However, as indicated above, the evidence does not establish that Claimant suffered borderline intelligence; the test results on which he relies were deemed invalid due to his failure to cooperate. Because Claimant cannot establish borderline intelligence, his case is distinguishable from <u>Grant v. Schweiker,</u> 699 F.2d 189 (4th Cir. 1983). Nor has Claimant demonstrated that his alleged mental impairment has any effect upon his functional capacity. Claimant's educational history, work history, and level of independence reflect a higher level of intelligence and functioning. Our cases plainly state that not every non-exertional impairment rises to a level that reliance upon the grids is

28

forbidden.  Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989), Smith
v. Schweiker, 719 F.2d 723,724-5 (4th Cir. 1984).  When a claimant's
non-exertional impairments do not prevent him from performing a
wide range of work at a given exertional level, the ALJ may rely on
the grids.  Smith at 725.  Here, the ALJ found that Claimant had
not establish any non-exertional limitations. (Tr. at 41, 42.)
That finding is supported by multiple DDS reports discussed in the
opinion and above.  Id.

The court proposes that the presiding District Judge find that
the ALJ's findings concerning Claimant's non-exertional limitations
were supported by substantial evidence.

3.  *Capacity for Light Work*

Claimant then argues that the ALJ improperly applied the grids
because light work would require him to be able to sit/walk for six
hours per day.  He argues that SSR 83-10 and a sit/stand option
would restrict him to sedentary work.  (Pl.'s Br. at 8-9.)
However, no medical evidence of record suggests that Claimant
required a sit/stand option.  As the ALJ found, Claimant's only
impairment was his obesity; he had no significant neurological,
gastrointestinal, musculoskeletal, or communicative disorders.
(Tr. at 41-2.) Even  in Brief, Claimant refers to no evidence
supporting his bald assertion that he required a sit/stand option.
The multiple DDS reports discussed herein indicate that Claimant
had no such limitation and that no such option was required.

29

Accordingly, Claimant has failed to meet his burden of proof.

Claimant then argues that the ALJ erred in failing to employ an expert when making his equivalency finding. (Pl.'s Br. at 8.) SSR 96-5p states that this issue is reserved to the Commissioner, however, and SSR 96-6p reinforces this authority. While SSR 96-6p requires that a medical expert opinion be obtained by the ALJ before a decision of disability on medical equivalence can be made, it also states that Psychiatric Review Technique Forms and various other documents on which medical and psychological consultants record their findings may also suffice. SSR 96-6p. In this case, multiple Psychiatric Review Technique Forms and findings on other DDS forms supported the ALJ's finding that Claimant did not meet or equal a Listing. The ALJ did not err in declining to call a medical expert.

Finally, while Claimant argues that he should have been permitted to subpoena Ms. Tate for testimony at the hearing, the ALJ correctly noted that 20 C.F.R. § 404.950(d)(1) allows the ALJ discretion to determine whether a witness' appearance is reasonably necessary for the full presentation of the case. 20 C.F.R. 404.950(d)(1)(2004). In this case, the ALJ noted that there was no indication that Ms. Tate's report was inaccurate or biased, nor that her presence would have added anything of value to the proceeding. (Tr. at 26.) The record was fully developed. (Tr. at 26.) The Claimant does not have an automatic right to subpoena a

witness.  (Tr. at 26, <u>citing</u> SSR 91-1(5).)

The court proposes that the presiding District Judge find that the ALJ's decision was supported by substantial evidence in these respects.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder</u>

31

v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).   Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

_____December 7, 2005_____
         Date

Mary E. Stanley
United States Magistrate Judge